# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

PIKE CO., INC.,                              :
                                             :
     Plaintiff,              :
                                             :
v.                                           :
                                             :
SOUTH CENTRAL CONNECTICUT                    :
REGIONAL WATER AUTHORITY;                    :
YANKEE HERITAGE, INC.,                       :
                                             :
     Defendants.             :          No. 3:08cv1751 (MRK)
                                             :
SOUTH CENTRAL CONNECTICUT                    :
REGIONAL WATER AUTHORITY,                    :
                                             :
     Cross-Claimant,         :
                                             :
v.                                           :
                                             :
YANKEE HERITAGE, INC.,                       :
                                             :
     Cross-Defendant.        :

## RULING AND ORDER

This case concerns a water main break that flooded the Buley Library on the campus of Southern Connecticut State University in New Haven, Connecticut on November 21, 2006. Along with a companion case, *Factory Mutual Insurance Co. v. Pike Co., Inc*, No. 08cv1775 (MRK) (D. Conn. filed Nov. 21, 2008), the case involves four parties[1] who have brought virtually every conceivable combination of counterclaims, cross-claims, and third-party claims against one another. The Court wishes to express its sincere appreciation for the diligent efforts

---

[1] All claims brought by or against a fifth party, Ferguson Mechanical Co., Inc. ("Ferguson Mechanical"), have now been settled. Thus, Ferguson Mechanical has already been dismissed as a party to this case. *See* Order [doc. # 126].

of counsel in their case management, briefs, during telephonic conferences, and at oral argument to help the Court keep track of the various parties, claims, and issues in this case and the companion case.

This Ruling and Order resolves three of the four pending motions in this case:[2] Yankee Heritage, Inc.'s ("Yankee Heritage's") Motion for Summary Judgment [doc. # 100] pursuant to Rule 56 of the *Federal Rules of Civil Procedure*; Yankee Heritage's Motion to Preclude the Expert Report and Testimony of Gregory Twomey [doc. # 101] pursuant to Rule 702 of the *Federal Rules of Evidence*; and the South Central Connecticut Regional Water Authority's ("the Water Authority's") Motion for Summary Judgment [doc. # 106]. For the reasons set forth below, the Court GRANTS Yankee Heritage's Motion for Summary Judgment [doc. # 100]; DENIES Yankee Heritage's Motion to Exclude the Report and Testimony of Gregory Twomey [doc. # 101] as moot; and GRANTS the Water Authority's Motion for Summary Judgment [doc # 106].

## I.

As a preliminary matter, due to the fact that this case involves four parties, numerous claims, and a companion case, there has understandably been some confusion regarding the filing of motions in the two cases. Yankee Heritage initially filed its Motion to Preclude the Expert Report and Testimony of Greg Twomey in this case rather than the companion case. But the party that hopes to offer Mr. Twomey's testimony – Factory Mutual Insurance Co., Inc.

---

[2] The Court previously denied Ferguson Mechanical's Motion to Preclude the Expert Report and Testimony of Ralph Johnson [doc. # 102] as moot, *see* Order [doc. # 145], and also previously denied Ferguson Mechanical's Motion for Summary Judgment [doc. # 107] as moot. *See* Order [doc. # 127]. Pike's Motion to Preclude the Report and Testimony of Kevin Flood [doc. # 104] will remain pending.

("Factory Mutual") – is in fact not a party to this case.[3] No claims by or against Factory Mutual Insurance have ever been filed in this case. Thus, the Court DENIES Yankee Heritage's Motion to Exclude the Report and Testimony of Gregory Twomey [doc. # 101] as moot. The Court has addressed the other motions to preclude Mr. Twomey from testifying in *Factory Mutual Insurance Co. v. Pike Co., Inc*, No. 08cv1775 (MRK) (D. Conn. Nov. 21, 2008), ECF No. 1.

## II.

Because this case is currently before the Court at the summary judgment stage, the Court sets forth the facts in the light most favorable to the nonmoving parties. *See, e.g.*, *DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 74 (2d Cir. 2010) (per curiam). Here, Yankee Heritage has moved for summary judgment on the Water Authority's common law indemnification claim against it, and the Water Authority has moved for summary judgment on Pike Co., Inc.'s ("Pike's") negligence claim against it. Thus, as to Yankee Heritage's Motion, the Court must set forth the facts in the light most favorable to the Water Authority, and as to the Water Authority's motion, the Court must set forth the facts in the light most favorable to the Pike. Unless the Court notes otherwise, the facts set forth here are undisputed.

On February 21, 2005, Pike entered into a contract with the Connecticut Department of Public Works ("the Public Works Department") to renovate and build an addition to the Buley Library on the campus of Southern Connecticut State University. Pike, in turn, subcontracted some of its work on the library project to Yankee Heritage and to Ferguson Mechanical Co., Inc. ("Ferguson Mechanical"). Yankee Heritage was responsible for excavation, and Ferguson Mechanical was responsible for utility drilling. Bob Ross of Pike, the Project Superintendent,

---

[3] Factory Mutual is listed as a party on the electronic docket in this case, probably because of the fact that Yankee Heritage filed its motion targeting Factory Mutual on the wrong docket.

oversaw the library project on the ground. The Public Works Department also hired another company, Fusco Corp. ("Fusco"), to serve as its Construction Administrator. Dave Long of Fusco was the Project Manager assigned to the library project.

At roughly the same time that Pike, Yankee Heritage, and Ferguson Mechanical agreed to work on the library project, the Water Authority entered into a separate contract with the Public Works Department to design and install a new water main for the Buley Library. A new water main was needed because the old water main was buried in the area where the library addition was going to be built. In June of 2005, Mr. Ross of Pike, accompanied by representatives from the Water Authority, walked the library project area and staked out the location where the new water main should be located. The Water Authority then proceeded to install a new water main and finished installing it in June 2005. The Water Authority apparently did not keep written records about the plan for the new water main, and the Water Authority installed it without any knowledge regarding whether other underground utilities would be installed in the same area as the new water main. In addition, the Water Authority apparently did not keep written records about any tests that it performed on the new water main subsequent to installing it.

Meanwhile, construction on the library project continued after the Water Authority installed the new water main. On November 16, 2006, Yankee Heritage began to excavate a trench parallel to the new water main, which was intended for a new high-temperature water line. In the process of digging the trench, Yankee Heritage partially exposed the new water main. On November 21, 2006, the new water main released, flooding the parallel trench and sending millions of gallons of water into the library's basement. As a result, the library was significantly damaged, and Pike was unable to resume its work on the library project until March 3, 2007. Factory Mutual, which insured the State of Connecticut against property damage, eventually paid

the State of Connecticut $6,034,463.35 for damages caused by the flood.

After the flood occurred, on November 30, 2006, Bob Prentice of the Public Works Department sent a memorandum to Fusco entitled "Sequence of Events Regarding Water Main Break of November 21, 2007." *See* Ex. B to Pike's Mem. in Opp'n to Water Authority's Mot. for Summary J. [doc. # 120-2] at 22. According to that memorandum, the Water Authority completed work on the new water main on June 29, 2005. *See id.* In September 2005, the Water Authority reported to the Public Works Department that it would in the near future forward the Public Works Department a map showing the location of the new water main. *See id.* In September 2006, the Water Authority returned to the site of the library project to install domestic water and sprinkler lines, which were completed on September 25, 2006. *See id.* Two days later, on September 27, 2006, the Public Works Department contacted the Water Authority, informed it that a gate valve was leaking, and asked the Water Authority to submit a pressurization report "on the newly installed system." *Id.* The Public Works Department never received the requested pressurization report. *See id.*

On November 19, 2008, Pike filed its Complaint [doc. # 1] against the Water Authority, asserting a single claim of negligence and alleging that the flood resulted from the Water Authority's failure to install the new water main in accordance with the standards of care and workmanship set forth in the National Fire Protection Agency ("NFPA") Code, failure to utilize any restraints in building the new water main, and failure to properly test the new water main after installing it. *See* Compl. [doc. # 1]. On November 21, 2008, Factory Mutual filed a complaint in this Court against Pike. *See* Complaint, *Factory Mutual Insurance Co. v. Pike Co., Inc*, No. 08cv1775 (MRK) (D. Conn. Nov. 21, 2008), ECF No. 1. Factual Mutual asserted subrogation claims against Pike for breach of contract and negligence, alleging that the flood

resulted from Pike's or Pike's subcontractors' failures to take proper precautions while engaged in construction work around the new water main. *See id.*

The procedural history of this case since the filing of the two complaints is complicated, to say the least. Rather than reciting that complicated history in full, the Court instead lists the claims that remain pending in the two cases. In the companion case, Factory Mutual asserts subrogation claims against Pike for breach of contract and negligence; Pike asserts common law indemnification claims against Yankee Heritage and the Water Authority, as well as a counterclaim against Factory Mutual; and the Water Authority asserts a common law indemnification claim against Yankee Heritage. In this case, Pike asserts a negligence claim against the Water Authority and breach of contract claim against Yankee Heritage, *see* Am. Compl. [doc. # 23]; and the Water Authority asserts a contribution claim and a common law indemnification claim against Yankee Heritage. *See* Cross-cl. [doc. # 27].

On September 30, 2010, the Yankee Heritage moved for summary judgment on the Water Authority's common law indemnification claim against it in this case. *See* Yankee Heritage's Mot. for Summary J. [doc. # 100]. Also on September 30, 2010, the Water Authority moved for summary judgment on Pike's negligence claim against it. *See* Water Authority's Mot. for Summary J. [doc. # 106]. The Court held oral argument on the various motions pending in this case and the companion case on March 3, 2011. At the oral argument, the Court asked the parties to submit supplemental briefing on one issue relevant to the Water Authority's Motion for Summary Judgment. The Court asked the parties to brief whether the summary judgment record contains any evidence that the Water Authority was asked to perform additional testing on the new water main after it was installed in June 2005. The Court thanks the Water Authority and Pike for submitting helpful supplemental briefs on that issue.

### III.

This Court must apply a familiar standard when resolving a motion for summary judgment. Summary judgment is appropriate only when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" submitted to the Court "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Civ. P. 56(a). "As to materiality, the substantive law governing the case will identify those facts that are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Summary judgment must be rejected "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). However, the party against whom summary judgment is sought cannot prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts," and instead "must come forward with specific facts showing that there is a *genuine issue* for trial." *Matshushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986) (quotation marks and citations omitted).

### IV.

### A.

The Court begins with the Water Authority's Motion for Summary Judgment. The Water Authority seeks summary judgment on Pike's negligence claim against it in this case. As both the Water Authority and Pike now recognize, under Connecticut law, a three-year statute of repose

applies to Pike's negligence claim. *See* Conn. Gen. Stat. § 52-577.[4] That relevant statute provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Conn. Gen. Stat. § 52-577. In other words, under Connecticut General Statutes § 52-577, the three-year limitations period *does not* begin on the date when the plaintiff first discovers an injury. *See Farnsworth v.* O'Doherty, 85 Conn. App. 145, 149-150 (2004). Pike filed its negligence claim against the Water Authority on November 19, 2008; the Water Authority argues that Pike's claim is untimely because the acts and omissions that Pike alleges all occurred before November 19, 2005.

## 1.

Although Pike raises a tolling argument in support of its motion, the Court will first consider whether Pike's negligence claim could conceivably be targeted at negligent acts or omissions by the Water Authority occurring after November 19, 2005. In its Local Rule 56(a)2 Statement listing material facts which it believes are in dispute, Pike asserts that the Water Authority was still working on the new water main as late as September 2006. *See* Pike's Local R. 56(a)2 Statement [doc. # 120-1] at 3. In support of that argument, it cites Mr. Prentice's memorandum to Fusco, dated November 30, 2006. *See* Ex. B to Pike's Mem. in Opp'n to Water Authority's Mot. for Summary J. [doc. # 120-2] at 22. The memorandum states that, in September 2005, the Water Authority returned to the site of the library project to install domestic water and sprinkler lines near the new water main. *See id.* The Water Authority completed its work on the domestic water and sprinkler lines on September 25, 2006. *See id.* Pike also cites

---

[4] Pike faults the Water Authority for initially citing the wrong statute, Connecticut General Statutes § 52-584, in its memorandum in support of its summary judgment motion. But while the Water Authority cited the wrong statute, a three-year period of repose would govern in this case under either statute. Thus, the Water Authority has not waived its statute of limitations defense.

portions of the deposition of Robert R. Rose. *See* Rose Dep., Ex. C to Pike's Mem. in Opp'n to Water Authority's Mot. for Summary J. [doc. # 120-2] at 27-28. Mr. Rose testified that a month or two before the flood occurred, the Water Authority did work on two "laterals" and tightened a water valve approximately thirty-five to fifty feet away from where the new water main released. *Id.* He specifically testified that the water line that "was involved in the loss" in November 2006 was the new water main installed in June 2005 – not the additional "lateral[]" lines that the Water Authority worked on in September 2006. *Id.* at 29.

Thus, the evidence in the summary judgment record simply does not support Pike's assertion that the Water Authority was still working on the new water main through September 2006. All that the evidence shows is that in September 2006, the Water Authority returned to the site of the library project to do other work, and more specifically, to install domestic water and sprinkler lines. *See* Ex. B to Pike's Mem. in Opp'n to Water Authority's Mot. for Summary J. [doc. # 120-2] at 22; Rose Dep., Ex. C to Pike's Mem. in Opp'n to Water Authority's Mot. for Summary J. [doc. # 120-2] at 27-28. Pike does not allege – and as far as the Court is aware, no party in this case or the companion case has ever alleged – that the library flood was caused by any negligence by the Water Authority in its work on the domestic water and sprinkler lines, either in the installation of the lines or in the Water Authority's work to fix the leak a few days later. Instead, Pike's allegation against the Water Authority has been from the very beginning of this case that it was the Water Authority's negligence in designing and installing the new water main – which again, it undisputedly finished installing in June 2005 – and its failure to test the new water main that caused the library flood. *See* Am. Compl. [doc. # 23] ¶ 28.[5]

---

[5] Even if Pike had argued that the Water Authority engaged in additional negligence in September 2006 that caused the flood, the evidence in the summary judgment record would not

9

Pike also suggests that the Water Authority's failure to properly test the new water main was a separate omission, and that its separate omission in failing to test the new water main occurred after November 19, 2005. The only evidence Pike offers in support of that allegation is Mr. Prentice's November 30, 2006 memorandum to Fusco. *See* Ex. B to Pike's Mem. in Opp'n to Water Authority's Mot. for Summary J. [doc. # 120-2] at 22. According to that memorandum, two days after the Water Authority completed its work on the domestic water and sprinkler lines, on September 27, 2006, the Public Works Department contacted the Water Authority and informed it that "a gate valve" was leaking some thirty-five to fifty feet away from where the new water main eventually broke. *See id*; Rose Dep., Ex. C to Pike's Mem. in Opp'n to Water Authority's Mot. for Summary J. [doc. # 120-2] at 27-28. After the Water Authority fixed the leak, the Public Works Department asked the Water Authority to submit a pressurization report "on the newly installed system." Ex. B to Pike's Mem. in Opp'n to Water Authority's Mot. for Summary J. [doc. # 120-2] at 22; *see* Rose Dep., Ex. C to Pike's Mem. in Opp'n to Water Authority's Mot. for Summary J. [doc. # 120-2] at 27-28. The Water Authority then failed to file a pressurization report in response to the request. *See id.*

The Court does not understand how the Water Authority's failure to test the new water main or to submit a pressurization report in response to the September 27, 2006 request from the Public Works Department could constitute an independently actionable wrong. As a practical matter, allowing independent claims based on a defendant's failure to respond to any request for

---

support such a claim. First, the only work the Water Authority did in September 2006 occurred nearly fifty feet away from the place where the flood occurred. Furthermore, that additional work was done a full two months before the flooding occurred. Second, there is no evidence that either the installation of the domestic water and sprinkler lines or the repair work on the week was done negligently. Thus, there would be no basis for a jury to conclude that work done in one location on a construction site in September could have caused a flood to suddenly occur months later in a location fifty feet away.

testing would permit virtually every plaintiff alleging negligence in construction or engineering work to avoid the three-year statute of limitations that applies to such negligence claims in Connecticut. Pike has not cited any Connecticut cases which suggest that ignoring a request to test one's work is an actionable wrong separate from any initial negligence in that work. But in any case, even assuming that the Pike could assert a claim based solely on the Water Authority's failure to respond to the Public Works Department's request for testing and a pressurization report, the evidence Pike has offered in support of such a separate claim is not sufficient to survive summary judgment.

Mr. Prentice's memorandum to Fusco is ambiguous with regard to whether the gate valve leak occurred somewhere along the new water main installed in June 2005, or somewhere along the domestic water and sprinkler lines which the Water Authority had installed just weeks before the leak occurred. *See id.* That memorandum is also ambiguous with regard to whether the "the newly installed system" which the Public Works Department asked the Water Authority test included the new water main installed in June 2005, or rather just the recently-installed domestic water and sprinkler lines. *Id.* It is not even clear whether the Water Authority asked for a new test, or was merely asking for a copy of an existing report. *See id.* Furthermore, the memorandum omits a number of additional important details about the request, such as who it was at the Public Works Department that contacted the Water Authority; to whom that person spoke at the Water Authority; and whether the Water Authority agreed in response to the request to perform further testing. Thus, while the meager evidence Pike has submitted might be enough to "give[] rise to speculation and conjecture" about whether the Water Authority was asked to double-check the work on the new water main – which it had completed more than a year before the request – it is

not sufficient to permit a jury to find in Pike's favor on a claim based on the Water Authority's allegedly insufficient response to the request.

**2.**

The Court must therefore consider Pike's argument that the statute of limitations tolled under the continuing course of conduct doctrine,[6] allowing it to sue based on the Water Authority's negligence in the design and construction of the new water main in June 2005. Although Connecticut General Statutes § 52-577 is a statute of repose, when a defendant's wrong consists of a continuing course of conduct, the limitations period does not begin to run until the continuing course of conduct is completed. *See Stuart v. Snyder*, 125 Conn. App. 506, 510 (2010). To support a finding that a defendant's actions or omissions constituted a continuing course of conduct under the current formulation of the doctrine, a plaintiff must introduce evidence that the defendant breached a duty that remained in existence after the commission of the defendant's original wrong. *See id.* The Connecticut Supreme Court has upheld lower court's conclusions that defendants' actions constituted continuing courses of conduct only where there has been evidence of some special relationship between the parties giving rise to a continuing duty, or evidence of later wrongful conduct by a defendant related to an initial wrongful act. *See*

---

[6] Just as Pike argues that the Water Authority waived its statute of limitations defense, the Water Authority argues that Pike has waived its tolling argument. Citing Connecticut Practice Book § 10-57, which requires that "[m]atters in avoidance of affirmative allegations in an answer or counterclaim shall be specially pleaded in the reply," *id.*, the Water Authority claims that Pike waived its tolling argument by failing to raise it in a reply to the Water Authority's Answer [doc. # 15]. The Water Authority fails to recognize that the *Federal Rules of Civil Procedure*, not Connecticut's procedural rules, govern in this federal court action. *See Shady Grove Orthopedic Associates, PA v. Allstate Insurance Co.*, 130 S. Ct. 1431, 1438 (2010). In federal court practice, "a reply to an answer ordinarily is unnecessary and improper, *see* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1185, at 27 (3d ed. 2004); a plaintiff need not file a reply unless the district court orders the plaintiff to do so. *See* Fed. R. Civ. P. 7(a)(7). Thus, Pike has not waived its tolling argument.

*id.* Pike argues in opposition to summary judgment on its negligence claim both that it had a special relationship with the Water Authority and that the Water Authority engaged in later wrongful conduct after its initial alleged negligence in June 2005. The Court will consider each of those two arguments in turn.

**a.**

Pike has not introduced any evidence which could support a reasonable jury finding that the Water Authority had a special relationship with Pike which gave rise to a continuing duty running toward Pike. In determining whether there was a special relationship between parties that gave rise to such a continuing duty, the Court must consider whether there is any evidence that the Water Authority "engaged in any affirmative conduct after the initial wrong, which includes making promises after the initial wrong or promises to do anything in the future, had a fiduciary or contractual relationship with the plaintiff[,] or committed fraud." *Rosenfield v. Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, 69 Conn. App. 151, 161-62 (2002); *see also OBG Technical Services, Inc. v. Northrop Grumman Space & Mission Systems Corp.*, 503 F. Supp. 2d 490, 511 (D. Conn. 2007) (concluding that under Connecticut law, an ordinary contractual relationship between sophisticated parties does not constitute a special relationship).

There is absolutely no evidence in the summary judgment record that after June 2005, the Water Authority made any promises to Pike, had any fiduciary or contractual relationship with Pike, or committed anything approaching fraud. *See id.* Indeed, it does not appear that the Water Authority and Pike had any meaningful relationship; the evidence in the summary judgment record shows that, at most, the Water Authority had a special relationship with and may have had duties to the Public Works Department, which hired it to install the water main. *See* Ex. B to Pike's Mem. in Opp'n to Water Authority's Mot. for Summary J. [doc. # 120-2] at 22.

Furthermore, Pike's argument that it had a special relationship with the Water Authority solely because the Water Authority is a "public corporation" with a "unique role," *see* Pike's Mem. in Opp'n to Water Authority's Mot. for Summary J. [doc. # 120] at 9, has no basis whatsoever in Connecticut law. If that were true, there would effectively be no statute of limitations in Connecticut on negligence claims against public corporations, government entities, and the like.

There is no evidence that the Water Authority engaged in any affirmative conduct after its initial alleged wrong that could have given rise to continuing duties toward Pike. As the Connecticut Appellate Court explained in *Rosenfield v. Rogin, Nassau, Caplan, Lassman & Hirtle*, the types of affirmative conduct by a defendant that can give rise to a special relationship with a plaintiff include "making promises after [an] initial wrong or promises to do anything in the future . . . [and] fraud." *Id.* at 161-62; *see also Sanborn v. Greenwald*, 39 Conn. App. 289, 297 (1995) (noting in holding the continuing course of conduct doctrine inapplicable to the plaintiff's claim that the after the defendant's initial alleged wrong, the defendant "did not engage in any affirmative conduct . . . , made no promise . . . , had no fiduciary or contractual relationship with the plaintiff . . . and committed no fraud"). The evidence in the record shows only that after June 2005, the Water Authority continued to do work for the Public Works Department on the library project and that the Public Works Department asked the Water Authority to provide it with a copy of a report. There is nothing in the record to show that the Water Authority promised the Public Works Department that it would perform such tests or provide such a report. There is also nothing in the record to show that the Water Authority lied about having performed such a test, or that it provided an inaccurate report in response to the request. Even if there was, it would at most show that the Water Authority had a special relationship with and owed continuing duties to the Public Works Department – not to Pike.

**b.**

Pike has also failed to introduce evidence of later wrongful conduct by the Water Authority related to its initial alleged wrongful act of failing to properly design, install, and test the new water main. The second general category under the continuing course of conduct doctrine applies only under "circumstances where [i]t may be impossible to pinpoint the exact date of a particular negligent act or omission . . . or where the negligence consists of a series of acts or omissions and it is appropriate to allow the course of [action] to terminate before allowing the" statute of repose to run. *Watts v. Chittenden*, 115 Conn. App. 404, 411-12 n. 2 (2009); *see also Lawrence & Memorial Hospital, Inc. v. Health Net, Inc.*, No. HHDX07CV075019865S, 2010 WL 5158334, at *3 (Conn. Super. Nov. 24, 2010) (citation omitted) ("The 'second general category addresses situations in which, because of a continuous course of contacts or dealings, it cannot be said with precision when a specific act or omission occurred in the course of the relationship."). Pike's argument with regard to the second category is as follows. In June 2005, the Water Authority failed to properly design, install, and test the new water main. In September 2006, the Water Authority returned to the area and installed domestic water and sprinkler lines. Also in September 2006, the Water Authority was called back to fix a leak.[7] After the Water Authority installed the domestic water and sprinkler lines and fixed the leak, the Public Works Department asked the Water Authority for a pressurization report "on the newly installed system." Ex. B to Pike's Mem. in Opp'n to Water Authority's Mot. for Summary J. [doc. # 120-2]

---

[7] Pike does not argue that the Water Authority's actions in installing the domestic water and sprinkler lines in September 2006 or fixing the leak the same month constituted wrongful conduct related to its earlier negligence. While those actions were certainly conduct, and those actions may have been related to the June 2005 installation of the new water main, there is no evidence that the Water Authority performed those actions in a wrongful manner. Pike has never suggested that it did.

at 22. The Water Authority's failure to provide the requested report or to perform pressure testing in response to the request was subsequent wrongful conduct related to its initial alleged wrong. The Court cannot accept that argument for two reasons.

*First*, as a matter of law, it is doubtful that a defendant's failure to perform tests that would have shown the defendant's initial negligence in construction is the kind of wrongful conduct which can toll the statute of limitations under the continuing course of conduct doctrine. The Court is not aware of any Connecticut court decisions – either from state courts or federal courts – that even contemplate the possibility that if a defendant performs negligent work and is later asked to double-check its work, the defendant's failure or refusal to comply with the request can reset the statute of limitations under the continuing course of conduct doctrine. To the contrary, in the analogous context of products liability, courts applying Connecticut law have concluded that while a defendant's failure to inform a defendant of known risks associated with its products is an omission of a continuing nature, *see Handler v. Remington Arms Co.*, 144 Conn. 316, 321 (1957); *Drakatos v. R.B. Denison, Inc.*, 493 F. Supp. 942, 945 n.3 (D. Conn. 1980), a defendant's failure to properly test its product is not an omission of a continuing nature. *See Ferguson v. Sturm, Ruger & Co., Inc.*, 524 F. Supp. 1042, 1044-45 (D. Conn. 1981).

It would be quite odd if such an omission could constitute wrongful conduct absent any evidence that a special relationship existed between the plaintiff and the defendant. A defendant's failure to check its original work, to change its methods in performing future work, or to discover its own earlier errors are precisely the sorts of omissions that can trigger the continuing course of conduct doctrine *when the plaintiff and defendant have a special relationship. See, e.g.*, *Witt v. St. Vincent's Medical Center*, 252 Conn. 363, 376-77 (2000) (holding that a physician has a continuing "duty to correct a diagnosis that he had reason to question in the first instance");

*Masse v. Perez*, 2011 WL 383854, at \*5 (Conn. Super. Jan. 4, 2011) (concluding that the trustee defendant had a continuing duty to the plaintiff to keep him informed about the details of the trust); *Shwartz v. Blum, Shapiro & Co., P.C.*, No. X04CV020100080S, 2006 WL 1230054, at \*4 (Conn. Super. Apr. 17, 2006) (concluding that the plaintiff had introduced evidence sufficient to permit a jury to conclude that the continuing course of conduct doctrine tolled the statute of limitations where the defendant accountant perpetuated his original accounting error by failing to discover it). Absent a special relationship, the Court knows of no reason why an ordinary defendant would have a legal duty to check earlier work in response to any request that it do so.[8] In sum, to recognize that a defendant takes on new duty to fix earlier negligence whenever anyone asks it to ensure that its prior actions were not done negligently would be to radically reconfigure the continuing course of conduct doctrine.

It is true, of course, that "continuing wrongful conduct may include acts of omission as well as affirmative acts of misconduct." *Rosenfield*, 69 Conn. App. at 159. But Connecticut courts routinely conclude that the continuing course of duty does not apply where there is no special relationship between the plaintiff and the defendant, and the only evidence is that the defendant continued to omit to take an action that it should have taken in the first place. *See Bellemare v. Wachovia Mortgage Corp.*, 284 Conn. 193, 198 n.7 (2007) (concluding that the continuing course of conduct doctrine did not apply where "the only subsequent act of the defendant other . . . was the defendant's continued failure to execute and deliver [a] release" of a mortgage). Where, as here, a defendant performs work negligently and fails to ensure that it was not negligent – for example, by testing the quality of its work – it is not "impossible to pinpoint

---

[8] As the Court has already discussed, even if the request at issue in this case could have given rise to a legal duty to respond, that duty would run from the Water Authority to the Public Works Department, which made the request, not to Pike.

the exact date of a particular negligent act or omission." *Watts*, 115 Conn. App. at 411-12 n. 2. Under such circumstances, the omission occurs when the defendant completes the job.

*Second*, even assuming that a defendant's failure to perform requested tests that might have disclosed initial negligence can constitute later wrongful conduct sufficient to toll the statute of limitations, the Court would conclude that the summary judgment record contains insufficient evidence to allow a jury to find a continuing course of conduct. *See Stuart*, 125 Conn. App. at 510. Pike has not introduced evidence which would allow a reasonable jury to conclude that the Water Authority's failure to respond to the Public Works Department's request was an omission related to the Water Authority's alleged negligence in designing, building, and failing to test the new water main. Again, the evidence in the record does not show that the Water Authority was specifically asked to check the new water main, as opposed to the sprinkler system and domestic water lines which were installed just before the request. *See* Ex. B to Pike's Mem. in Opp'n to Water Authority's Mot. for Summary J. [doc. # 120-2] at 22. It does not even show that the Water Authority was asked to perform new testing – just that it was asked to send a report to the Public Works Department. *See* Ex. B to Pike's Mem. in Opp'n to Water Authority's Mot. for Summary J. [doc. # 120-2] at 22. It does not show who at the Water Authority was asked about the testing; what exactly they were asked to do; or whether the request was for immediate testing the next month, or for testing within the next several months, or even for testing at any time before completion of the library project. The bare-bones evidence that Pike has introduced is simply not specific enough to permit a jury to conclude that the Water Authority was ever asked to re-check its June 2005 work on the new water main. It shows that the Water Authority – not Pike – made *some* sort of request. That is all.

There is no evidentiary basis in this case for a jury to find that the Water Authority engaged in a continuing course of wrongful conduct that tolled the usual statute of limitations. Although Pike does not rely on an equitable tolling argument, the Court nonetheless notes that the accident which gave rise to Pike's claim occurred in November 2006, just a year and a half after the new water main was installed in June 2005, and thus well within the applicable three-year statute of limitations. Pike – which seeks here to recover the costs associated with construction delays on the library project – was even able to return to work on the library project in March 2007, at which point there was still more than a year left to sue the Water Authority for negligence in the design and construction of the new water main. Instead of filing its negligence claim by June 2008, Pike waited until November 2008 to file its claim against the Water Authority in this case, at which time the three-year statute of limitations had run.[9] The Court therefore GRANTS the Water Authority's Motion for Summary Judgment [doc # 106].

**B.**

The Court now turns to Yankee Heritage's Motion for Summary Judgment. Yankee Heritage seeks summary judgment on the Water Authority's common law indemnification claim against it in this case. Under Connecticut Law, a claim for common law indemnity is "a claim for reimbursement in full from one on whom a primary liability is claimed to rest . . . ." *Crotta v.*

---

[9] The Court recognizes that if the continuing course of conduct doctrine applied, Pike would have been justified in waiting until three years after it discovered its injury to file its negligence claim against the Water Authority. *See Rosato*, 82 Conn. App. at 405. Although Pike has not raised any other arguments for an exception to the statute of limitations, the Court notes that Pike's delay in filing suit against the Water Authority until nearly two years after it discovered it injury would prevent it from prevailing based on any other theory that excuses untimely filing. For instance, if Pike had argued that the Water Authority should be equitably estopped from relying on the statute of limitations as a defense, that argument would fail because Pike was not diligent in pursuing its negligence claim against the Water Authority after it became aware of its injury. *See Connecticut National Bank v. Voog*, 233 Con. 352, 367 (1995).

*Home Depot, Inc.*, 249 Conn. 634, 641-42 (1999) (citation omitted). The doctrine of common law indemnity distinguishes between active or primary negligence and passive or secondary negligence, shifting the impact of liability from a passive or secondary joint tortfeasor to the active of primary joint tortfeasor. *See id.* (citation omitted). Thus, the Water Authority seeks to pass the full extent of its liability on to the Yankee Heritage in the event that a jury eventually finds the Water Authority liable to Pike on its negligence claim, the only claim that is pending against the water authority in this case. *See, e.g.*, *Finance California, Inc. v. Lawyers Title Insurance Corp.*, No. 3:07cv804 (MRK), 2010 WL 2982986, at *4 (D. Conn. June 22, 2010) (denying summary judgment on a common law indemnification claim).

The only claim on which the Water Authority could potentially have been found liable in this case is, again, Pike's negligence claim. Neither Pike nor Yankee Heritage has asserted a breach of contract claim against the Water Authority because the Water Authority did not have any contractual relationship with either of those parties. The Court in this Ruling and Order grants summary judgment in the Water Authority's favor on Pike's negligence claim because the statute of limitations on the negligence claim has run. Thus, the Water Authority has no potential liability to pass on to Yankee Heritage, or for that matter, to anyone else. The Court therefore GRANTS Yankee Heritage's Motion for Summary Judgment [doc. # 100].

## C.

In addition to the Water Authority's indemnification claim against Yankee Heritage, the Water Authority also asserts a contribution claim against Yankee Heritage. Yankee Heritage has not sought summary judgment on that claim. Nonetheless, this Court has the authority under the *Federal Rules of Civil Procedure* to grant summary judgment on the contribution claim *sua*

*sponte* after giving the parties notice and a reasonable time to respond. *See* Fed. R. Civ. P. 56(f). The Court now gives such notice.

Like an indemnification claim, a contribution claim is essentially a mechanism for passing on liability to a joint tortfeasor. "[I]ndemnity involves a claim for reimbursement in full from one on whom a primary liability is claimed to rest, while contribution involves a claim for reimbursement of a share of a payment necessarily made by the claimant which equitably should have been paid in part by others." *Kaplan v. Merberg Wrekcing Corp.*, 152 Conn. 405, 412 (1965); *see Skuzinski v. Bouchard Fuels, Inc.*, 240 Conn. 694, 697 n.3 (1997). Because the Court grants summary judgment in the Water Authority's favor on the only claim against it in this case, the Court believes that summary judgment on the Water Authority's contribution claim against Yankee Heritage is also proper. **If any party objects to a grant of summary judgment on the Water Authority's contribution claim against Yankee Heritage, it must file an objection on the docket no later than April 25, 2011. If no party objects, the Court will grant summary judgment in Yankee Heritage's favor on that contribution claim on April 26, 2011.**

## V.

In sum, the Court concludes that Mr. Twomey's testimony is not relevant to this case as Factory Mutual is not a proper party to this case; that the statute of limitations has run on Pike's negligence claim against the Water Authority; and that because the Court grants summary judgment in the Water Authority's favor on the only claim against it in this case, there is no basis for the Water Authority to pass liability on to Yankee Heritage. The Court therefore GRANTS Yankee Heritage's Motion for Summary Judgment [doc. # 100]; DENIES Yankee Heritage's Motion to Exclude the Report and Testimony of Gregory Twomey [doc. # 101] as moot; and GRANTS the Water Authority's Motion for Summary Judgment [doc # 106].

As a result of this Ruling and Order, the only claims that remain pending in this action are Pike's breach of contract claim against Yankee Heritage and the Water Authority's contribution claim against Yankee Heritage. In addition, should the parties not object to the proposed grant of summary judgment in Yankee Heritage's favor on the Water Authoerit's contribution claim, the only remaining claim in this action will be Pike's breach of contract claim against Yankee Heritage. The Court will shortly issue a separate order consolidating this case and the companion case for trial.

IT IS SO ORDERED.

/s/ _____Mark R. Kravitz_____
United States District Judge

**Dated at New Haven, Connecticut: April 18, 2011.**